# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| ANDRE R. VACTOR, | : | |
|    Plaintiff, | : | Case No. 3:06cv00072 |
|    vs. | : | District Judge Walter Herbert Rice<br>Magistrate Judge Sharon L. Ovington |
| OFFICER JOSHUA JACOBS, et al., | : | |
|    Defendants. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.  INTRODUCTION

Plaintiff Andre Vactor was detained and arrested during a party at a friend's house in March 2005. He was charged with obstructing official business. The charge was later dismissed. Plaintiff brings this case under 42 U.S.C. §1983 claiming that Defendants – several police officers; the City of Urbana, Ohio; and the Urbana Police Department – violated his rights under both the United States Constitution and Ohio law.

In November 2007 the Motion to Withdraw filed by Plaintiff's counsel was granted, and Plaintiff has since proceeded pro se.

The case is presently pending on Defendants' Motion for Summary Judgment (Doc. # 32), Plaintiff's Motion to Continue (Doc. # 35), Defendants' Motion to Dismiss for Lack of Prosecution (Doc. # 37), Plaintiff's Brief (Doc. #38), Plaintiff's Motions and Oppositions (Doc. # 39), Defendants' Reply (Doc. #40), and the record as a whole.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

## II. PROCEDURAL HISTORY

The somewhat unusual procedural history of this case warrants a detailed discussion because Defendants seek dismissal due to Plaintiff's failure to prosecute and because Plaintiff seeks to avoid Defendants' Motion for Summary Judgment in part by requesting a continuance of the case for further discovery.

The Court's Preliminary Pretrial Conference Order set, in part, April 6, 2007 as the discovery deadline; May 10, 2007 as the deadline for filing Motions not directed at the pleadings; and August 24, 2007 as the trial date. (Doc. # 6). Defendants subsequently took the deposition of Plaintiff, the parties exchanged written discovery.

On August 14, 2007, this Court granted Defendants' Motion to Stay Trial proceedings, due to the deployment of one Defendant, officer Michael, to Iraq. (Doc. #12). The Court also extended discovery until October 15, 2007, with the trial date pending. (Doc. #14).

On January 10, 2008, the Court sustained the Motion to Withdraw filed by Plaintiff's Counsel. The Court then attempted to conduct a telephone conference but Plaintiff, proceeding pro se, neglected to provide the Clerk of Court with a telephone number at which he (Plaintiff) could be reached. Consequently, on April 4, 2008 Plaintiff was instructed to notify the Court within twenty days as to the identity of his successor counsel or, alternatively, to indicate whether he wished to proceed pro se. (Doc. #19). The Court further advised Plaintiff that his failure to respond in a timely manner would result in the dismissal of his case. *Id.*

On April 25, 2008, Plaintiff filed a Request for Time to Secure Legal Counsel. (Doc. # 20). Soon thereafter the case was referred to the undersigned (Doc. # 21), and during a during a telephone status conference, Plaintiff indicated that he was proceeding pro se. The case was set for trial on May 4, 2009, with discovery due by October 6, 2008 and with motions not directed to the pleadings due by November 3, 2008. (Doc. #s 22, 23).

From June 17, 2008 until the discovery cutoff on October 6, 2008, Plaintiff made no effort to conduct any discovery. On October 6, 2008, Plaintiff filed a Motion for Extension of Time to Complete Discovery (Doc. # 25) and a Motion to Amend the Complaint (Doc. # 26). Defendants submitted a response in opposition. (Doc. # 28). The Court denied both motions. (Doc. # 29).

On November 3, 2008, Defendants filed their presently pending Motion for Summary Judgment. The following day, the Court sent a Pro Se Notice of Motion for Summary Judgment, wherein Plaintiff was ordered to submit a response to Defendants' Motion no later than November 28, 2008. (Doc. # 33). Plaintiff was advised that his failure to do so may result in dismissal of the case. And he was further advised that his response must include evidence, of the same quality as would be admissible at trial, showing that there is a genuine issue of material fact for trial. *Id*.

Plaintiff responded with a Motion to Continue Case seeking another thirty to sixty days to conduct discovery, and otherwise asking the Court to deny Defendants' Motion for Summary Judgment and continue the trial. (Doc. #35).

Defendants next filed a Memorandum in Opposition to Plaintiff's Request for Continuance (Doc. #36), and a Motion to Dismiss for Failure to Prosecute (Doc. # 37). Defendants contend that dismissal is warranted because Plaintiff failed to abide by the Court's directives, failed to conduct any discovery for more than one year and did not file a response in opposition to Defendants' motion for summary judgment. *Id*.

In late December 2008, Plaintiff filed a document captioned, "Brief why Plaintiffs Lawsuit Should Continue" (Doc. #38) and a Memorandum opposing Defendants' Motion to Dismiss (Doc. #39). Defendants filed a Reply. (Doc. 40).

The case is therefore pending upon Defendants' Motion for Summary Judgment and Defendants' Motion to Dismiss for Failure to Prosecute (Doc. #s 32, 37), Plaintiff's Motion Continue Case (Doc. #35) and Motion to Deny Summary Judgment (Doc. #39), the parties' additional Memoranda (Doc. #s 36, 38, 40), and the record as a whole.

3

## III. FACTUAL BACKGROUND

### A. Plaintiff's Complaint

Plaintiff states in his Complaint that during the early morning hours of March 20, 2005, Plaintiff attended a party at a friend's residence. When he arrived at the party, no alcohol was present and many of the party-goers were under age twenty-one. At some point during the party, individuals over age twenty-one arrived with a keg of beer. According to the Complaint, "Some of the individuals at the party then began to consume alcohol." (Doc. #1 at ¶8). Plaintiff did not consume any alcohol during the party. *Id*. at ¶9.

Police officers from the Urbana Police Department – including Defendants Joshua Jacobs, Kip Michael and John Purinton – arrived at the party suspecting underage consumption of alcohol. When Plaintiff was asked by the Officers for identification, he gave them his name and offered to give them his Social Security number. Plaintiff also told the officers that he did not know if he had any identification with him. *Id*. at ¶¶13-14.

Plaintiff was arrested by Officer Michael and charged with Obstructing Official Business "for failing to provide his identification." *Id*. at ¶15. He was taken to a holding cell in the Urbana jail. The criminal charge against him was eventually dismissed, he asserts, "because there is no basis in the law for arresting an individual for failure to provide identification." *Id*. Plaintiff also asserts that as a result of his arrest and resulting need to appear in court, he missed work at his new job. Because of this, and his status as a probationary employee, Plaintiff was terminated from his new job thus "suffering substantial lost wages...." *Id*. at ¶ 19.

Plaintiff asserts his arrest was part of a larger pattern of harassment against him by the Urbana Police Department and the City of Urbana. According to Plaintiff, he has been targeted for harassment because his father was personally involved in lodging complaints against the former Urbana Police Chief, which eventually led to his

resignation.  As an example of the alleged harassment, Plaintiff asserts that in January 2005 he was wrongfully arrested for disorderly conduct for his role in a fight, even though he was not even at the scene of the fight.  *Id*. ¶24.  Plaintiff also cites an incident wherein he was charged with "inducing panic, and aiding and abetting a juvenile in breaking curfew."  *Id*. ¶25.

Plaintiff alleges that Defendants' acts or omissions were pursuant to a policy, practice, or custom of inadequate training and supervision of Urbana police officers.  *Id*. at ¶¶ 27, 28.  And Plaintiff similarly alleges that Defendants' acts or omissions "were pursuant to a policy, practice and/or custom of ratification of the conduct of Urbana police officers who harass, intimidate and threaten."  *Id*.  at ¶29.

Plaintiff claims in his Complaint that Defendants violated his rights under the Fourth Amendment of the United States Constitution by arresting and detaining him without probable cause on March 20, 2005.  Plaintiff also claims that both before and after his unlawful arrest on March 20, 205, the City of Urbana violated his rights under the Fourth and Fourteenth Amendments by specifically targeting him for harassment and intimidation, and through its policy, practice, or custom of inadequate police training, supervision, investigation, and disciple.  Finally, Plaintiff claims that Defendants are liable under theories of malicious prosecution, intentional infliction of emotional distress, and punitive damages.

### B. Plaintiff's Deposition Testimony

During his deposition, Plaintiff explained that on March 20, 2005, the date of the incident in question, he went to a friend's house to discuss his new job.  (Doc. #32, Exhibit A, Plaintiff's depos. at p. 40).  Plaintiff had been recently hired where his friend worked and his friend explained the job to him.  *Id*.  Plaintiff was nineteen years old at the time of the incident.  *Id*. at 44.

There was no alcohol at his friend's house when Plaintiff first arrived.  *Id*. at 47. While Plaintiff spoke with his friend, others began to arrive.  *Id*. at 40, 47-49.  Some of

5

the new arrivals were age twenty one or older; some were younger. *Id*. at 48-49. After Plaintiff had been there about an hour, someone brought a keg of beer. *Id*. There were about fifteen people there at this time. When asked during his deposition if he saw anybody underage at the party drinking, Plaintiff testified, "Yeah. I think there was a couple of them that were drinking." *Id*. at 52.

At some point during the party, Plaintiff heard some glass breaking and turned to find three police officers standing near him. *Id*. at 40, 64-65. Other officers and Sheriff's deputies were on outside the house and also began to enter. *Id*. at 40, 60, 65, 73. Plaintiff testified, "there was a large number of officers there." *Id*. at 73-74. Plaintiff also stated that officers tackled one individual and struggled to arrest him and "said he was resisting arrest." *Id*. at 40, 65.

According to Plaintiff, some officers had their guns drawn, and they told everyone to put their hands up and "get on the wall and then most of us did it." *Id*. at 40, 74-75. Plaintiff recognized officers Michael and Jacobs, and Sergeant Purinton, from his prior knowledge of them. *Id*. at 75-76. But Plaintiff did not know if any of these officers had their guns drawn during the incident. *Id*.

An unknown officer asked Plaintiff for his identification. *Id*. at 77. Plaintiff told the officer that he was not sure if he had his identification with him, and he provided the officer with his name and social security number. *Id*. at 78-79. The officer told Plaintiff to "stand on the wall." *Id*. at 79-80. A little while later, Sergeant Purinton told Plaintiff that he had refused to show his identification and officer Michael arrested him, placing him in handcuffs. *Id*. After he was arrested, Plaintiff provided his driver's license. *Id*. at 82, 90-91. Plaintiff acknowledged during his deposition that he did not provide his driver's license to the officers before being arrested. *Id*. at 90-91.

Plaintiff also acknowledged that officer Jacobs was just present and did not do anything in regard to Plaintiff's arrest on March 20, 2005. *Id*. at 98.

6

### C. Sergeant Purinton's Affidavit

The record of this case also contains the affidavit of Sergeant Purinton. He asserts that on March 20, 2005, at 2:40 a.m., he responded, along with several Urbana police officers, to a house "in reference to an underage alcohol consumption party." (Doc. #32, Exhibit B at ¶4). When the Urbana officers knocked on the door to the house, "[t]he subjects in the home did not answer; rather, they yelled insults, including the word 'pigs,' and 'flipped us off' and 'mooned us' through the windows." *Id*. at ¶5. About one hour later, the Urbana officers were allowed into the residence and began to investigate the ages of those present. According to Sergeant Purinton, one person, who later turned out to be Plaintiff, repeatedly refused to identify himself or provide identification. Plaintiff was arrested for obstructing official business. Upon a pat down search of Plaintiff's pockets, officers found his driver's license identifying him as Andre Vactor. *Id*. at ¶s 5-9.

### IV. SUMMARY JUDGMENT STANDARD

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party,

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the "pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id*. at 323; see also *Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991). "'Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pintino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see*

7

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely assert its previous allegations, it is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Mich. Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 2726 (1998).

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the

nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989); *see L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.*, 9 F.3d 561 (7th Cir. 1993); *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. . . ."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

**V.    ANALYSIS**

    A.    **Plaintiff's Arrest and Detention**

Plaintiff claims that the individual officers are liable under 42 U.S.C. §1983 because they arrested him on March 20, 2005 without probable cause and thus in violation of his rights under the Fourth Amendment.

Defendants contend that Plaintiff has failed to state a claim under the Fourth Amendment, because the officers had probable cause to arrest him for obstructing official business under Ohio Rev. Code §2921.31. Defendants further contend that qualified immunity shields them from liability on Plaintiff's federal constitutional claims.

Plaintiff contends that Defendants' Motion for Summary Judgment lacks merit for numerous reasons and seeks leave to conduct further discovery before the Court rules on Defendants' Motion. (Doc. #s 35, 38, 39). A continuance for further discovery is unwarranted because, as discussed above, *supra*, §II, Plaintiff has been granted two prior lengthy extensions of discovery, *see* Doc. #s 6, 14, 22-23, and has been provided with notice that he must respond to Defendants' Motion for Summary Judgment with evidence sufficient to create a genuine issue of material fact, *see* Doc. #33. In addition, Plaintiff has not alleged the existence of circumstances sufficient to demonstrate that a further continuance is warranted under Fed. R. Civ. P. 56(f). *See* Doc. #s 35, 38, 39.

9

# 1.
# Qualified Immunity

"Section 1983 provides a cause of action to those deprived of a constitutional right by law enforcement officers acting under the color of state law." *Parsons v. City of Pontiac*, 533 F.3d 492, 500 (6th Cir. 2008) (citation omitted).

In the interest of protecting public officials performing their discretionary duties, such as police officers, from unduly onerous lawsuits under 42 U.S.C. §1983, the Supreme Court has recognized "qualified immunity" for such officials, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (citing *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) and stating that the *Malley* case stands for the proposition that "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"). Thus in order for a public official to be held accountable, the right the official is charged with violating must be clearly established and be one of which a reasonable official in that position would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

"Analysis of the qualified-immunity defense generally proceeds under the two-step, sequential inquiry articulated by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)." *Parsons*, 533 F.3d at 500. The first inquiry is whether the facts, viewed in the light most favorable to the party asserting injury, show the officer's conduct violated a constitutional right. *Id*. (citation omitted). When conducting this inquiry at the summary-judgment stage, the Court adopts the plaintiff's version of the facts. *Id*. (citing *Scott v. Harris,* 550 U.S. 372, ___, 127 S.Ct. 1769, 1775, 167 L.Ed.2d 686 (2007)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Parsons*, 533 F.3d at 500 (quoting *Saucier*, 533 U.S. at

201, 121 S.Ct. 2151).

The second step of the qualified immunity analysis addresses whether the constitutional right at issue was clearly established "such that reasonable official would have understood that his behavior violated that right." *Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir.2002) (citation omitted). "This inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition." *Parsons*, 533 F.3d at 500 (quoting *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151)).[2]

While it is often appropriate to address the qualified immunity analysis by considering these two steps in sequence, it is not mandatory. *Pearson v. Callahan*, __U.S.__, __, 129 S.Ct. 808, 818, __ L.Ed.2d __, __ (2009). District courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. The circumstances in the present case provide no reason to deviate from considering the two-step analysis in sequential order.

## 2.
### Arrest

The Fourth Amendment states, in part, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation. . . ." U.S. CONST. amend. IV. A §1983 plaintiff bears the burden of demonstrating that the defendant police officers lacked probable to arrest him. *Parsons*, 533 F.3d at 500; *see Stemler v. City of Florence*, 126 F.3d 856, 871 (6th Cir. 1997).

The Supreme Court has held that the test for whether an arrest is constitutionally valid is "whether, at the moment the arrest was made, the officers had probable cause to make it – whether at that moment the facts and circumstances within their knowledge and

---

[2] The Sixth Circuit occasionally undertakes a third consideration: "'whether the plaintiff offered sufficient evidence to indicate that what the official allegedly did was objectively reasonable in light of clearly established constitutional rights.'" *Parsons*, 533 F.3d at 500 (citation omitted).

of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). "Probable cause is assessed 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 615 (6th Cir. 2007) (citation omitted).

In the present case, arresting officers charged Plaintiff with obstruction of official business in violation of Ohio Revised Code §2921.31, which provides in part:

> (A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties. . . .

There is no genuine issue over the fact that on March 20, 2005, the Defendant officers had been dispatched to a certain address to investigate whether minors were engaged in underage drinking at a party. *See* Doc. #32, Exhibit B at ¶4; *see also* Doc. #1 at ¶10. It is likewise undisputed that although Plaintiff was at the party and in the house when the officers entered to investigate underage drinking, he did not drink any alcohol. Plaintiff acknowledges that minors were drinking at the party in his presence. (Doc. #32, Exhibit A, Plaintiff's depos. at p. 52). Having received a dispatch to a specific address where they found these undisputed circumstances, the Defendant police officers were lawfully investigating the consumption of alcohol by underage persons at the time of Plaintiff's arrest.³ *See Humphrey v. Mabry*, 482 F.3d 840, 848 (6th Cir. 2007) ("effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation

---

³ Ohio Revised Code §4301.69(E)(1) states, in relevant part: "No underage person shall knowingly . . . possess, or consume any beer or intoxicating liquor in any…private place." "Underage person" means a person under age twenty-one. Ohio Rev. Code. §4301.69(H)(5).

for the transmitted information.")(quoting *United States v. Hensley*, 469 U.S. 221, 231, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985)); *see Boykin v. Van Buren Tp.*, 479 F.3d 444, 450 (6th Cir. 2007).

While Plaintiff provided the officers with his name, he failed to produce his driver's license – with his date of birth – even though he had it in his pocket. It was reasonable for the officers to request Plaintiff's license, to determine his age, and his failure to produce his license – even though he possessed his license at the time – hampered and impeded the officers' investigation of underage drinking. Consequently, based on the undisputed facts, no jury could reasonably conclude that the officers lacked probable cause under these circumstances to arrest Plaintiff and him with obstruction of official business. *See State of Ohio v. Von Allmen*, 2005 WL 681296 (Oho App. 2nd Dist., Mar. 25, 2005) (it was reasonable of officer to request that defendant provide identification where officer has articulable suspicion that defendant was consuming alcohol while underage); *see also In re Sommer*, 2004 WL 2496452 (5th App. Dist., Nov. 1, 2005)(juvenile's refusal to give personal information hampered or impeded officer's investigation of apparent underage drinking).

In addition, in light of the two cases upon which Defendants' rely – *Von Allmen,* 2005 WL 681296 and *Sommer,* 2004 WL 2496452 – and given the absence of contrary case law concerning probable cause to charge a minor with obstructing official business under similar factual circumstances, established law at the time would not have alerted a reasonable officer in the Defendant Officers' position that they lacked probable cause to arrest Plaintiff for obstruction of official business. Qualified immunity therefore shields the officers from Plaintiff's Fourth Amendment wrongful arrest claim. *See Malley*, 475 U.S. at 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 ("qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'").

Accordingly, Officer Jacobs, Officer Michael, and Sergeant Purinton are entitled to summary judgment on Plaintiff's Fourth Amendment wrongful arrest claim.

# 3.
# Detention

Plaintiff claims that the Defendant police officers lacked probable cause to detain him in violation of his rights under the Fourth Amendment. See *Doc. #1 at ¶33*. To the extent Plaintiff's detention claim rests on his assertion that the officers lacked of probable cause, this claim lacks merit as discussed above, *supra*, §V(A)(2).

Construing Plaintiff's Complaint in his favor, requires further discussion of whether the officers initial investigatory detention of Plaintiff violated his rights under the Fourth Amendment.

It is well settled that police officers may briefly detain a person for investigative purposes if they have "reasonable suspicion" supported by "articulable facts" that criminal activity "may" be afoot. *See Terry v. Ohio*, 392 U.S. 1, 28, 88 S.Ct. 1868 (1968); *see also Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop. The officer must be able to articulate more than an 'inchoate and unparticularized suspicion or 'hunch' of criminal activity." *Wardlow*, 528 U.S. at 123, 120 S.Ct. 673 (citing in part *Terry*, 392 U.S. at 27, 88 S.Ct. 1868).

To determine whether an officer had reasonable suspicion to justify an investigatory detention, courts must examine the totality of the circumstances. *Dorsey v. Barber*, 517 F.3d 389, 395 (6th Cir. 2008). In doing so, "it is important to note that the officer's reasonable suspicion need not arise exclusively from his own direct observations. Rather, it can be derived from such sources as informant tips, dispatch information, and directions from other officers." *Id*. (citing in part *Smoak v. Hall*, 460 F.3d 768, 778 (6th Cir. 2006).

In the present case, the Defendant police officers had a reasonable suspicion,

14

supported by articulable facts, to briefly detain Plaintiff to determine whether he was engaged in underage drinking. As discussed above, it is undisputed that the Defendant police officers were dispatched to the address where Plaintiff was present to investigate suspicion of underage drinking of alcohol in violation Ohio Rev. Code. §4301.69(E)(1). Upon legally entering the premises, the officers personally observed a keg of beer and several individuals, who appeared to be under the ages of twenty-one, consuming alcohol. These undisputed facts provided the officers with more than a mere hunch that underage drinking may be afoot, and instead constitute articulable facts and circumstances forming a reasonable suspicion reasonable sufficient to justify the officers' detention of Plaintiff to learn his age and to determine whether he had been engaged in underage drinking.

In addition, the Defendant police officers detention of Plaintiff was "temporary and limited in duration to the period of time necessary to effectuate the purpose of the [detention]." *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319 (1983). This is mainly so because Plaintiff's undisputed refusals to produce his driver's license, even though it was in his pocket, was the main factor prolonging his detention. The record, moreover, contains no evidence indicating that the officers, by providing Plaintiff with more than one chance to produce his driver's license before arresting him, detained him longer than necessary to determine his age.

Lastly, qualified immunity shields the Defendant police officers from Plaintiff's Fourth Amendment challenges to his detention. Because the facts and circumstances provided the officers with articulable suspicion of criminal wrongdoing, a reasonable officer in the Defendant officers' position would have known that the brief detention of Plaintiff did not violate his clearly established Fourth Amendment rights. *See Terry*, 392 U.S. at 28, 88 S.Ct. 1868; *see also Wardlow*, 528 U.S. at 123, 120 S.Ct. 673.

Accordingly, Sergeant Purinton and Officers Jacobs and Michael are entitled to summary judgment on Plaintiff's Fourth Amendment challenges to his detention.

  **B.**  <u>**Plaintiff's Remaining Federal Claims**</u>

Plaintiff's Complaint raises claims against the Defendant police officers in the "professional capacities" as well as claims against the City of Urbana, Ohio. (Doc. #1 at ¶s 2, 47-51). It is well settled that a claim against an officer of a governmental entity, in his or her official capacity, is a claim against the governmental entity itself. *See Kentucky v. Graham*, 473 U.S. 159, 205 S.Ct. 3099 (1985); *see also Brunson v. City of Dayton*, 163 F.Supp.2d 919 (S.D. Ohio 2001). The analytical focus on these claims properly falls on the City of Urbana, rather the officers in their personal capacities. *See Graham, 473 U.S. at 166* ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

To succeed in proving claims under 42 U.S.C. §1983 against a municipality, a plaintiff must show that municipality maintains an unconstitutional or illegal policies. *Monell v. Dept. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A plaintiff must "identify the policy, connect the policy to the city itself, and show that the particular injury was incurred because of the execution of that policy." *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994). In other words, the plaintiff must establish "a close causal connection between the policy and the injury suffered." *Johnson v. Hardin County, Ky.*, 908 F.2d 1280, 1285 (6th Cir. 1990).

In the present case, Plaintiff has not produced any evidence to show that the execution of a custom, policy, or practice of the City of Urbana caused his civil rights to be violated. Rather, he admits that he has no information regarding any practice or custom, including the training or supervision of the officers. (Doc. #32, Exh. A, Plaintiff's depos. at pp. 143-44). Thus, he can not demonstrate that the City of Urbana maintains an unconstitutional custom, policy, or practice. And he lacks evidence sufficient to establish the necessary causal link between a custom, policy, or practice of the City of Urbana and his alleged injuries. Consequently, his claims against the City of Urbana and his official capacity claims against Sergeant Purinton, Officer Jacobs and

Officer Michael must fail.

Plaintiff's Complaint also raises a claim of harassment and intimidation, in violation of the Fourth and Fourteenth Amendments, against the City of Urbana. Plaintiff, however, has produced no probative evidence that the City of Urbana "at least implicitly authorized, approved or knowingly acquiesced" in any such unconstitutional conduct by its police officers. *See Hummel v. City of Carlisle,* 229 F.Supp.2d 839, 856 (S.D. Ohio 2002)(citing *Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1246 (6th Cir. 1989).

As previously noted, Plaintiff acknowledges that he has no information regarding any practice or custom to demonstrate that the City of Urbana maintains an unconstitutional custom, policy, or practice concerning harassment or intimidation of him. And he has no evidence to establish the necessary causal link between such a municipal custom, policy, or practice and his alleged injuries.

Furthermore, even if the City of Urbana has liability exposure for this §1983 claim, Plaintiff cannot establish the elements for a cause of action for harassment or intimidation. The incidents cited by Plaintiff as evidence of the harassment and intimidation include an arrest, in January 2005, for disorderly conduct and an arrest for aiding and abetting juveniles in breaking curfew, which occurred after the subject matter arrest. (Doc. #1 at ¶s 24, 25). Plaintiff pled out on the disorderly conduct charge (Doc. #32, Exh. A, Plaintiff's depo. at p.141), and was found guilty of the aiding and abetting charge at trial, *id*. At pp. 103- 04. Thus, Plaintiff cannot show any actual infringement of a constitutional right and, therefore, any municipal liability under §1983. *See Emmons v. McLaughlin,* 874 F.2d 351 (6th Cir. 1989).

Lastly, because Plaintiff's Fourth Amendment challenges to his detention and arrest against the Defendant Police Officer lack merit, he cannot as a matter of law establish §1983 liability against the City of Urbana on those claims. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986).

Plaintiff's Complaint further raises §1983 claims against the Urbana Police Department.

The Urbana Police Department is a sub unit of the city government and as such is not an entity by itself capable of being sued under §1983. *See Webb v. Greene County Sheriff's Office*, 494 F.Supp.2d 779, 786 (S.D. Ohio 2007)("The Greene County Sheriff's Office is a sub-unit of Greene County and is, therefore, not subject to suit."); *see also Brothers v. County of Summit*, 2007 WL 1567662 at 8 n.2 (N.D. Ohio 2007) ("The sheriff's department is not a 'person' for purposes of §1983."); *cf. Mathews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("the Police Department is not an entity which may be sued . . . ."); *cf. also Williams v. Dayton Police Dept.*, 680 F.Supp. 1075, 1080 (S.D. Ohio 1987) ("The Dayton Police Department and Dayton Police Organized Crime Unit are sub-units of the city government and are merely vehicles through which the city fulfills its policing functions.... As such, they are not proper party defendants.").

Accordingly, Defendants' Motion for Summary Judgement is well taken as to Plaintiff's §1983 claims against the Defendant police officers in their professional capacity, the City of Urbana, and the Urbana Police Department.

### C. Plaintiff's State Law Claims

"Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521; see 28 U.S.C. §1367(c)(3). Nothing in the present case militates in favor of departing from this general rule, and Plaintiff's state law claims should therefore be dismissed without prejudice.

**IT THEREFORE IS RECOMMENDED THAT:**

1. Defendants' Motion for Summary Judgment (Doc. #32) be GRANTED, Plaintiff's claims against Defendants under 42 U.S.C. §1983 be dismissed with prejudice, and Plaintiff's state law claims against Defendants be dismissed without prejudice;

2. Plaintiff's Motion to Continue (Doc. # 35) and Plaintiff's Motions and Oppositions (Doc. # 39) be denied;

3. Defendants' Motion to Dismiss for Lack of Prosecution (Doc. # 37) be denied as moot; and

4. The case be terminated on the docket of this Court.


March 5, 2009

                    s/ Sharon L. Ovington
                      Sharon L. Ovington
                 United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten (10) days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen (13) days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).